**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| U-Haul International, Inc., et al, ) | No. CV 04-0662 PHX-DGC |
| ) | |
| Plaintiffs, ) | |
| ) | **ORDER** |
| vs. ) | |
| ) | |
| Lumbermens Mutual Casualty Company, ) | |
| ) | |
| Defendant/Counter-Claimant. ) | |
| ) | |
| _____ ) | |
| ) | |
| Lumbermens Mutual Casualty Company, ) | |
| ) | |
| Defendant/Counter-Claimant, ) | |
| ) | |
| vs. ) | |
| ) | |
| U-Haul International, Inc., et al, ) | |
| ) | |
| Counter-Defendants. ) | |
| ) | |
| _____ ) | |

The Court held a bench trial in this matter on March 7, 2007. The parties submitted substantial deposition testimony and numerous written exhibits, and Plaintiffs/Counter-Defendants U-Haul International, Inc. and Republic Western Insurance Company (collectively, "U-Haul") presented the live testimony of Thomas Matush. The parties also made extended oral arguments. The Court has carefully considered the evidence and arguments submitted by the parties. For the reasons explained below, the Court will enter judgment in favor of U-Haul.

**I.     Background.**

   **A.     U-Haul's Coverage Scheme.**

U-Haul intended to be covered by a comprehensive insurance scheme consisting of separate, individual insurance policies, or "layers." Dkt. #110; *see Employers Ins. Co. of Wausau v. Century Indem. Co.*, 443 F.3d 573, 574 n.1 (7th Cir. 2006) (explaining the concept of layered coverage); *AMHS Ins. Co. v. Mut. Ins. Co. of Ariz.*, 258 F.3d 1090, 1093 (9th Cir. 2001) (same); *Am. Family Mut. Ins. Co. v. Cont'l Cas. Co.*, 23 P.3d 664, 666 (Ariz. Ct. App. 2001) (same).

During the relevant coverage periods – April 1, 1999 to March 31, 2000, and April 1, 2000 to March 31, 2001 – U-Haul was protected by four layers. Dkt. ##110, 111; *see* Dkt. #110, App. A. The first three policies, issued by Republic Western Insurance Company (separately, "Republic Western"), provided primary and excess coverage up to a total limit of $7,000,000 per occurrence in excess of a $25,000 self-insured retention. The fourth policy, purchased from Defendant/Counter-Plaintiff Lumbermens Mutual Casualty Company ("LMC"), provided excess coverage up to a limit of $13,000,000 per occurrence. In other words, the LMC policy did not attach until the $7,000,000 total coverage provided by the underlying Republic Western policies was exhausted.[1]

   **B.     U-Haul's Settlements.**

U-Haul settled the "Nelson claim," which arose out of an automobile accident, for the sum of $7,500,000. U-Haul settled the "Fernandez claim," which also arose out of an

---

[1] From April 1, 1999 to March 31, 2000, Policy No. RG99 ("RG99") provided primary coverage in excess of a self-insured retention of $25,000, up to a limit of $250,000 per occurrence. The second, Policy No. RX99 ("RX99"), provided excess coverage up to a limit of $750,000 per occurrence. The third, Policy No. RU99 ("RU99"), provided excess coverage up to a limit of $6,000,000 per occurrence. The fourth, Lumbermens Policy No. 9SR 120037-01, provided excess coverage up to a limit of $13,000,000 per occurrence. From April 1, 2000 to March 31, 2001, U-Haul's coverage scheme consisted of four almost identical policies. Republic Western Policy No. RGMM replaced RG99, Republic Western Policy No. RXMM replaced RX99, Republic Western Policy No. RUXX replaced RU99, and Lumbermens Policy No. 9SR 120037-02 replaced 9SR 120037-01.

- 2 -

1  automobile accident, for $8,000,000.  U-Haul settled the "Martinez claim," the details of
2  which have not been provided to the Court, for $7,000,000.  The parties do not dispute the
3  dates of these settlements or the insurance policies they implicate.  As the settlement amounts
4  were at or above the $7,000,000 coverage limit of the Republic Western policies, all four
5  layers of U-Haul's coverage were implicated.

6  **C.   The Parties' Dispute.**

7  U-Haul and LMC disagree on whether the payment of indemnity and loss adjustment
8  expenses ("LAE") – generally, legal fees incurred in the investigation, negotiation, or
9  defense of a claim – or the payment of indemnity alone (1) exhausts the $7,000,000 total
10 limit of the Republic Western policies and (2) may trigger the coverage of the LMC policy.
11 U-Haul contends that payments of both indemnity and LAE are included in a determination
12 of whether the $7,000,000 limit has been reached, and that "LMC's coverage applies excess
13 of the underlying [Republic Western] policies' $7 million in combined limits of liability with
14 respect to an occurrence, regardless of whether those occurrence limits have been reduced
15 or eroded by indemnity payments or by LAE payments." Dkt. #110 at 1-2.  LMC argues that
16 the $7,000,000 limit is reached by payments of indemnity alone, and that LMC's coverage
17 "does not attach until a total of $7,000,000 in indemnity payments has been paid" by the
18 underlying Republic Western policies.  Dkt. #91 at 50.

19 The Court previously ruled in favor of U-Haul on this issue, holding that the RU99
20 and RUXX policies (collectively, the "RU policies") may be exhausted by payments of
21 indemnity and LAE.  Dkt. #124.  (LMC does not dispute that the RG and RX policies may
22 be exhausted by indemnity and LAE.)  Through additional briefing and rulings, the Court
23 disposed of all but two remaining issues: (1) whether U-Haul should be equitably estopped
24 from claiming that the RU policies may be exhausted by LAE, and (2) the prevailing party's
25 damages.  These issues were addressed during the bench trial.  In the pages that follow, the
26 Court will set forth its findings of fact and conclusions of law on the equitable estoppel
27 defense and damages.  The Court will also address a few motions made in connection with
28 the trial.

## II. Equitable Estoppel.

### A. Arizona Law.

The parties agree that Arizona law governs this case. In Arizona, "[t]he elements of estoppel are 'conduct by which one . . . induces another to believe . . . in certain material facts, which inducement results in acts in reliance thereon, justifiably taken, which cause injury[.]'" *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 682 P.2d 388, 399 (Ariz. 1984) (quoting *Sahlin v. American Casualty Company of Reading*, 436 P.2d 606, 608 (Ariz. 1968)).

Arizona courts hold that a party may not justifiably rely on a belief or representation when the party has ready access to controverting facts. The Arizona Supreme Court has held, for example, that an insured "could not have justifiably believed that he was covered by the policy in question because exact knowledge of the expiration date was readily available to him." *Sahlin*, 436 P.2d at 608. The Arizona Supreme Court provided this explanation:

> "Means of knowledge and knowledge itself are, in legal effect, the same thing where there is enough to put a party on inquiry. Knowledge which one has or ought to have under the circumstances is imputed to him[.] In other words, whatever fairly puts a person on inquiry is sufficient notice where the means of knowledge are at hand; and if he omits to inquire, he is then chargeable with all the facts which, by a proper inquiry, he might have ascertained. A person has no right to shut his eyes or his ears to avoid information and then say that he had no notice; he does wrong not to heed the 'signs and signals' seen by him."

*Id.* (quoting *Hagin v. Fireman's Fund Ins. Co.*, 353 P.2d 1029, 1032 (Ariz. 1960)).

LMC bears the burden of proving the affirmative defense of equitable estoppel. As LMC acknowledged in its trial brief, Arizona law requires that the defense be established by "clear and satisfactory" evidence. Dkt. #146 at 3; *Peterson Construction, Inc. v. Arizona State Carpenters Health and Welfare Trust Fund*, 880 P.2d 694, 701 n.6 (Ariz. Ct. App. 1994); *Facit-Addo, Inc. v. Davis Financial Corp.*, 653 P.2d 356, 360 (Ariz. Ct. App. 1982); *Desert Vista Apartments, Inc. v. O'Malley Lumber Co.*, 436 P.2d 479, 481 (Ariz. 1968).

### B. Findings of Fact.

On the basis of the evidence submitted by the parties, the Court makes the following findings of fact. These findings lead the Court to conclude that LMC has not established the

affirmative defense of equitable estoppel by clear and satisfactory evidence.

    1.  LMC first issued excess insurance above a U-Haul RU policy in 1998. The only signed application for the 1998 insurance specifically stated that the policies underlying the LMC policy would be defense "within aggregate limits." Ex. 2. This representation means that the limits of the underlying insurance policies could be reached both by indemnity payments and by defense payments – LAE. LMC disputes that it ever received a copy of this application, and has provided the Court with a different 1998 application representing that defense cost coverage by the underlying policies was "unlimited," meaning that such costs would not be counted in reaching policy limits. Ex. 100. The contradiction between these two 1998 applications is typical of the evidence in this case. Although much evidence seems to support LMC's argument that it was told that the underlying policies would not count defense costs in reaching their aggregate limits, other evidence suggests precisely the opposite. The Court nonetheless finds, for reasons explained below, that the true nature of the RU policies was readily available to LMC – that it was known or should have been known – and that LMC therefore has not proved by clear and satisfactory evidence that it justifiably relied on representations made by U-Haul's alleged agent, AON Risk Services, Inc. ("AON").[2]

    2.  On February 26, 1998, LMC provided a "Quote" to AON setting forth the terms on which LMC would provide excess coverage to U-Haul. Ex. 103. Section 8 of the Quote stated that the underlying U-Haul insurance would be "(Defense in addition to limit)*." This phrase reflected LMC's apparent requirement that defense costs, or LAE, not be included within the aggregate limits of the underlying insurance. The asterisk that followed this phrase referred the reader to a footnote at the end of Section 8 that was even more explicit: "Our form will not respond until such time as the **indemnity** portion of a loss exceeds the underlying or self-insured limit." Ex. 3 at 2 (emphasis in original).

---

[2] LMC contends that AON was acting as U-Haul's agent in procuring the insurance, a fact U-Haul disputes. The Court need not resolve this issue because it concludes that LMC was not justified in relying on AON's representations even if AON was acting as U-Haul's agent.

- 5 -

3. On March 30, 1998, LMC issued a "Binder" that set forth its insurance commitment to U-Haul. The form of the Binder was virtually identical to LMC's Quote, with one notable exception. Section 8 no longer contained the language "(Defense in addition to limit)*." Curiously, the asterisked footnote remained, but it did not refer back to any particular portion of the Binder. Ex. 5. The omission of the language "(Defense in addition to limit)*" was carried forward in two amended Binders dated April 1 and 7, 1998, so it does not appear to have been inadvertent. Exs. 107, 108. The deletion of the clear statement that had been contained in the Quote suggests that LMC's requirement for the underlying policies had changed.

4. The 1998 Binders issued by LMC contained two additional significant provisions. First, the Binders specifically stated that they would follow the form of the underlying RU policy. Thus, rather than issuing its own insurance policy, LMC adopted the form of the RU policy, which, as the Court has concluded, did not exclude LAE from policy limits. Dkt. #124. *See* Exs. 105, 107, 108. In addition, the 1998 Binders specifically stated that U-Haul was to provide LMC with a copy of the underlying RU policy within 90 days. This presumably was so that LMC could review the RU policy and ensure that it was consistent with LMC's requirements. Had LMC reviewed the RU policy, it would have seen, as the Court did, that the policy included LAE in the aggregate insurance limits. Dkt. #124.[3]

5. On January 16, 1999, AON applied to LMC for an additional year's coverage for U-Haul. The 1999 insurance application specifically stated that the underlying policies' coverage of defense costs was to be "unlimited." Ex. 123. This statement supports LMC's assertion that it was told that defense costs would fall outside of underlying policy limits. Significantly, however, the insurance application included a complete copy of the

---

[3]LMC contends that the language of the RU policy would not have put it on notice of this fact because the policy is not clear and the Court's interpretation was novel. The Court does not agree. The Court's reading of the policy was consistent with its plain language. Dkt. #124. At a minimum, reading the policy would have put LMC on notice that LAE might well be counted in reaching RU policy limits.

- 6 -

1998 RU policy, and the application made clear that LMC was being asked to cover the same policy for 1999. *Id*. The enclosed 1998 policy included the same "ultimate net loss" provision that was contained in the 1999 and 2000 policies – provisions the Court has found to clearly include defense costs within aggregate limits. As Arizona law holds, "whatever fairly puts a person on inquiry is sufficient notice where the means of knowledge are at hand; and if he omits to inquire, he is then chargeable with all the facts which, by a proper inquiry, he might have ascertained." *Sahlin*, 436 P.2d at 608.

6. In response to the 1999 application, LMC issued its 1999 policy. Again, LMC did not issue its own insurance terms, but instead adopted the form of the underlying RU policy. Indeed, LMC's policy contained this language: "This policy follows the exact terms and conditions of the **Republic Western Insurance Company** . . . policy number **RU99**[.]" Ex. 15. (emphasis in original).[4] By this language, LMC adopted the exact terms and conditions of the RU policy, including the provision providing that LAE was included within policy limits. Dkt. #124. LMC knew by this act that it would be bound by the language of the RU policy, a fact which provided all the more reason for LMC to review the 1998 RU policy carefully.

7. Copies of the RU99 policy were sent to LMC on May 25 and July 23, 1999. Exs. 24, 25. Thus, by July of 1999, LMC had received copies of the RU policy on at least four different occasions – within 90 days of issuing the 1998 Binder, as part of the 1999 application, and in May and July of 1999. LMC had ample opportunity to review and understand the terms of the underlying insurance it was adopting.

8. Stephen Tibbs, who was in charge of excess casualty insurance for the West Coast for LMC, testified that underwriters at LMC would review underlying insurance policies when they were received. Tibbs Dep., dated January 22, 2005, at 36, 102.

9. On January 14, 2000, AON applied to LMC for a continuation of U-Haul's coverage. Ex. 8. The application did not include any representation concerning the

---

[4]There were a few exceptions to this statement, but they are not relevant to this case. *Id*.

- 7 -

1 nature of the underlying insurance. The application did include, however, a copy of the
2 RU99 policy. This was at least the fifth time LMC had received a copy of the RU policy.

3       10.      On March 28, 2000 LMC issued a Binder for the 2000-2001 policies.
4 As with previous years, the Binder stated that it was following the form of the underlying RU
5 policy and required that a copy of the RU policy be provided within 90 days.

6       11.      Counsel for LMC admitted during trial that the RX and RG policies
7 underlying the LMC coverage are defense within limits policies. Thus, LMC admits that its
8 insurance policies covered at least two layers of defense within limits policies. This
9 admission belies any suggestion by LMC that it believed it was providing excess coverage
10 for underlying "defense outside of limits" policies. Moreover, if LMC understood that the
11 RX and RG policies were defense within limits, then it certainly had reason to suspect that
12 the RU policy would be the same.

13       12.      In summary, the Court finds that LMC either knew or should have
14 known that the RU policies were defense within limits policies. The Court finds that LMC
15 did not justifiably rely on representations by AON to the contrary. LMC received the RU
16 policies on at least five separate occasions, perhaps more. LMC's underwriting practice was
17 to read the policies. LMC's 1998 Binders suggest that LMC knowingly deleted a phrase
18 which made clear that the underlying coverage was to be defense outside of limits. The
19 Court finds that LMC has failed to prove by clear and satisfactory evidence that it justifiably
20 relied on representations by AON that the underlying policies were defense outside of limits
21 coverages.

22     **C.**    **Conclusions of Law.**

23       1.      Because LMC has failed to prove that it justifiably relied on
24 representations from AON that the underlying insurance was defense outside of limits, LMC
25 has failed to establish an essential element of its equitable estoppel defense. The Court
26 accordingly concludes that LMC is not entitled to prevail on the defense of equitable
27 estoppel.
28 / / /

**III.    Damages.**

    **A.    The Admissibility of U-Haul Business Records.**

During the trial, the Court and parties spent a considerable amount of time addressing the admissibility of Exhibits 28, 29, and 30. These exhibits represent computer generated summaries of payments made by Republic Western with respect to the Fernandez, Nelson, and Martinez claims. Thomas Matush, Republic Western's Assistant Vice President of Claims, testified that the data reflected in the exhibits are kept in the ordinary course of Republic Western's business, are placed in Republic Western's computers on the same day as the payments they reflect, and are placed in the computers by persons with knowledge of the payments. Mr. Matush further testified that the payments are made on the basis of invoices received and retained in the ordinary course of Republic Western's business, and are paid with checks generated in the ordinary course of that business. Mr. Matush generated Exhibits 28, 29, and 30 by querying Republic Western's computer. In response to his queries, the computer printed out the payment information reflected in the exhibits.

LMC objected to the admissibility of the exhibits as hearsay. LMC also asserted that the exhibits were summaries of evidence not admissible under Federal Rule of Evidence 1006 because LMC had not been provided with supporting documentation – the checks and invoices related to the payments reflected in the exhibits. After hearing extensive arguments on these issues and breaking for 30 minutes to review relevant case law, the Court overruled LMC's objections.

Exhibits 28, 29, and 30 qualify as business records of Republic Western under Rule 803(6). The documents represent data compilations concerning events at Republic Western (payments); the data compilations were made at or near the time of those events by a person with knowledge; the data compilations were kept in the course of Republic Western's regularly conducted business activity; and it was the regular practice of Republic Western to make the data compilations. All of these facts were established by the testimony of a qualified witness, Mr. Matush.

"The term 'data compilation' ensures the admissibility of records not kept in

1  conventional written form, including electronic computer storage. Printouts of data that have
2  been stored in a computer may be admissible business records as long as the data were input
3  and used pursuant to a business duty in accordance with regular business practice." 5 Jack
4  B. Weinstein and Margaret A. Berger, *Weinstein's Federal Evidence* § 803.08[3] (2d ed.
5  2006) (footnotes omitted). "A business record may include data stored electronically on
6  computers and later printed out for presentation in court, so long as the original computer
7  data compilation was prepared pursuant to a business duty in accordance with regular
8  business practice." *Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*, 38 F.3d 627, 632 (2d
9  Cir. 1994) (quotations omitted); *see also United States v. Fujii*, 301 F.3d 535, 539 (7th Cir.
10 2002) (computer records compiled and presented in computer printouts prepared specifically
11 for trial were admissible under Rule 803(6) even though the printouts themselves were not
12 kept in the ordinary course of business, because underlying records were compiled and
13 maintained in the ordinary course of business and other elements of foundation under Rule
14 803(6) were satisfied).

15    LMC's objection under Rule 1006 is unfounded because Exhibits 28, 29, and 30 are
16 not summaries of other evidence. Rather, they are business records of Republic Western.
17 The fact that the business records summarize information within Republic Western's
18 computers does not bring them within the scope of Rule 1006. Business records often
19 constitute summaries of information maintained in the regular course of a business. Rather,
20 the exhibits constitute writings within the meaning of Rule 1001 and photocopies of those
21 writings are admissible under Rule 1003.

22    **B.    Findings of Fact.**

23    1.    The Court finds that U-Haul is entitled to recover $220,260.60 in
24 damages for the Nelson settlement. LMC's counsel stated at the March 7, 2007 trial that
25 LMC did not disagree with this damages calculation if the Court admitted Exhibits 28, 29,
26 and 30. The Court further finds that LMC is entitled to interest of $123,773.55 on this
27 amount for reasons stated on the record by U-Haul's counsel during the trial.
28 / / /

2. The Court finds that U-Haul is entitled to $1,241,925.54 in damages for the Fernandez settlement. The Court agrees with the damages calculation explained by U-Haul's counsel during the March 7, 2007 trial. The Court finds that U-Haul is entitled to recover $372,576.00 in interest on this amount for the reasons explained by U-Haul's counsel during trial.

### C. Conclusions of Law.

The Court concludes that U-Haul and Republic Western are entitled to judgment against LMC in the total amount of $1,958,535.69. The Court will enter judgment in this amount through a separate document pursuant to Rule 58 of the Federal Rules of Civil Procedure.

## IV. Other Matters.

A. For reasons stated on the record, the Court granted LMC's Motion to Exclude Douglas M. Bell's additional testimony. Dkt. #151.

B. LMC argued at the close of U-Haul's evidence that U-Haul had failed to prove damages. The Court does not agree. U-Haul presented evidence of damages as set forth above. Because U-Haul is the insured under the LMC policies, the Court finds that U-Haul proved it was entitled to recover these sums.

C. LMC made a number of arguments at the close of U-Haul's testimony that were not preserved in the parties' final pretrial order. These include an argument that a business and auto policy was never exhausted, that the "defense, settlement, and supplemental payments" provision of the RU policies shows that the policies were not exhausted, and arguments regarding Texas and Florida statutes. The Court's Order Setting Trial specifically stated that "legal arguments" not "identified in the [final pretrial order] shall not be available at trial, except to prevent manifest injustice." Dkt. #149. LMC made no showing of manifest injustice. The Court therefore will not address these new arguments.

D. LMC argued that U-Haul made no showing that the defense costs incurred in the Martinez, Fernandez, and Nelson matters are reasonable. The Court disagrees. Mr. Matush testified that the Republic Western personnel who made payments in these matters

1 were obligated to evaluate invoices and determine their reasonableness. LMC presented no
2 evidence to suggest that the payments set forth in Exhibits 28, 29, and 30 were unreasonable.
3        E.    U-Haul stated its desire to recover attorneys' fees in this matter. U-Haul shall
4 file an application for attorneys' fees on or before **April 6, 2007**. The application will
5 include all materials required by LRCiv. 54.2. U-Haul shall not delay the filing of a
6 memorandum in support of its fee application as suggested by LRCiv 54.2(b)(2), but shall
7 file all materials on **April 6, 2007**. LMC shall file a response in opposition by **April 27,**
8 **2007**. U-Haul shall file a reply on or before **May 11, 2007**.
9        DATED this 14th day of March, 2007.

*[Signature: Daniel G. Campbell]*

David G. Campbell
United States District Judge